THE STATE v. TOM BUGG, Appellant.—292 S. W. 49.

Division Two, January 24, 1927.

**1. REPUTATION OF DEFENDANT: Accessory to Robbery: Honesty and Fair Dealing.** The State has no right to show that the reputation of a defendant is bad in the particular respect which will affect his guilt or innocence of the crime charged. Where defendant is being tried as an accessory to a robbery and has testified, denying his guilt, it is error to permit the State to show by a witness in rebuttal, that the defendant's general reputation for morality, honesty and fair dealing is bad. His general reputation for morality may be shown, as affecting his credibility as a witness; but, there being a sharp conflict in the testimony on the question of his guilt, testimony that his reputation for honesty and fair dealing is bad, affects that question, and defendant by testifying does not put those elements of character in issue.

**2. ———: Remoteness.** The general reputation of defendant, as a witness, should be limited to the time of the crime charged, or to a time so near thereto as to be relevant and material. His reputation after the commission of the offense is not relevant, and remoteness in his prior reputation affects its weight, even if so near the act as to be admissible.

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 1122, p. 581, n. 15; Section 1123, p. 581, n. 21. **Witnesses**, 40 Cyc., p. 2558, n. 63; p. 2690, n. 97.

Appeal from Cape Girardeau Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED.

*Gallivan & Finch* for appellant.

(1) Where the defendant has not put his reputation in issue it is error to permit the State to attack it. State v. Shuster, 263 Mo. 602; State v. Beckner, 194 Mo. 294; State v. Baird, 288 Mo. 62; State

v. Barker, 249 S. W. 78.    (2)    Where the defendant testifies as a witness it is error to permit the State to make a general assault upon defendant's reputation not limited to matters affecting his credibility as a witness.    State v. Pollard, 174 Mo. 607; State v. Archey, 256 S. W. 803.    (3)    It is likewise error to permit a general assault on the reputation of defendant's witnesses without limiting the inquiry to traits affecting their credibility.    State v. Archey, 256 S. W. 803; State v. Beckner, 194 Mo. 281; State v. Pollard, 174 Mo. 607.

*North T. Gentry*, Attorney-General, and *J. D. Purteet*, Special Assistant Attorney-General, for respondent.

The trial court committed no error in permitting the State to introduce rebuttal testimony to the effect that defendant's general reputation in the community where he lived for morality, honesty and fair dealing was bad.    Defendant having testified as a witness in his own behalf, although he does not otherwise put his reputation in issue, may be impeached in the same way that any other witness may be. Sec. 4036, R. S. 1919; State v. Richardson, 194 Mo. 342; State v. Starr, 244 Mo. 175; State v. Ross, 306 Mo. 506; State v. Edmundson, 218 S. W. 865; State v. Baird, 288 Mo. 67; State v. Shuster, 263 Mo. 602; State v. Higgs, 259 S. W. 458; State v. Barker, 249 S. W. 77; State v. Archie, 301 Mo. 400; State v. Ayres, 285 S. W. 998; State v. Cooper, 271 S. W. 474.

HIGBEE, C.—The defendant was found guilty on May 29, 1925, in the Circuit Court of Cape Girardeau County, of robbery in the first degree and appealed from a sentence of imprisonment in the penitentiary for a term of ten years.

An indictment was returned by the grand jury of Scott County on December 17, 1924, charging that the defendant and Clarence Parsons, on or about June 27, 1924, at the County of Scott, unlawfully and feloniously assaulted F. T. Cutliph, cashier and in charge of the Vanduser District Bank, a banking corporation, and then and there, by violence to the said F. T. Cutliph and by putting him in fear of some immediate injury to his person, feloniously did steal, take, rob and carry away $1374, the property of the said Vanduser District Bank, in the presence and against the will of the said F. T. Cutliph, against the peace and dignity of the State.    On the application of the defendant, a change of venue was ordered to the Circuit Court of Cape Girardeau County, where the case was tried and a verdict of robbery as charged was found, as above stated.    Motion for new trial was overruled and sentence was pronounced in accordance with the verdict on June 3, 1925.

The evidence offered by the prosecution tends to prove that the bank was robbed by Clarence Parsons, Ross Parsons and Ben Mc-

Pheron; that the defendant planned the robbery and was an accessory before the fact. Learned counsel for the appellant in their brief, after summarizing the evidence, say: "We deem it unnecessary to make an extensive review of the testimony, as there was ample evidence on the part of the State to put the case to the jury, and, on disputed issues of fact, the finding of the jury is held to be binding on the court."

At the conclusion of the evidence for the prosecution, the defendant testified in his own behalf, denying any complicity in the robbery or acquaintance with the robbers, all of whom were non-residents of the State.

In rebuttal the prosecution called Mr. Louis Gober, who lived in Scott County and had known the defendant many years. The witness was asked if he was acquainted with the defendant's general reputation in the community where he lived for morality, honesty and fair dealing. Judge Finch, counsel for defendant: "I object to that as not competent; object to the form of the question and the nature of the question." The objection was overruled and an exception saved. The witness said he knew the defendant's reputation, and that it was bad. Other witnesses testified to the same effect.

In the motion for new trial it is alleged that the court erred in permitting the State in rebuttal to impeach the defendant by general questions as to morality without specifying the trait of character; that said questions seeking to elicit testimony regarding the reputation were broad, not limited to defendant's reputation prior to the commission of the alleged act in controversy, and had the effect of impeaching defendant's evidence and destroying the value of defendant's testimony as a witness in his own behalf as a result of a reputation acquired by merely being charged with being an accessory to the robbery of the bank.

It is insisted in appellant's brief that there was a sharp conflict in the testimony as to the guilt or innocence of the defendant and that by testifying in his own behalf the defendant did not put in issue his reputation for morality, honesty and fair dealing, and "that testimony of this character goes not to the credibility of the defendant as a witness, but goes primarily to the question of his guilt or innocence."

A defendant in a criminal case, testifying in his own behalf, may be contradicted and impeached as any other witness in the case. [Sec. 4036, R. S. 1919.]

In State v. Ross, 306 Mo. 499, 267 S. W. 853, the defendant was convicted of arson. On page 506 Judge WHITE said: "Witnesses were produced in evidence to swear that the defendant had a bad reputation for morality. Defendant did not put his reputation in issue, and assigns error to the admission of that evidence. A de-

fendant may be impeached as any other witness may be. Since the defendant testified in the case the State had the right to prove that his reputation for truth and veracity was bad, and also to show that his general reputation for morality was bad, as affecting his credibility. The State, however, had no right to attack his character as a defendant; that is, it had no right to show that his reputation was bad in the particular respect which would affect his guilt or innocence of the crime charged. [State v. Edmundson, 218 S. W. l. c. 865; State v. Baird, 288 Mo. l. c. 67; State v. Shuster, 263 Mo. l. c. 602; State v. Higgs, 259 S. W. l. c. 458; State v. Barker, 249 S. W. l. c. 77.] The evidence should be limited to the simple question as to the defendant's reputation for morality." See also State v. Ayers, 285 S. W. 998 (4), and State v. Beckner, 194 Mo. 295, 91 S. W. 892.

The court erred in permitting the State's witnesses to be interrogated as to the general reputation of the defendant for honesty and fair dealing. The defendant had not put his character for those traits in issue; the evidence complained of was a direct attack upon his character as defendant; the State "had no right to show that his reputation was bad in the particular respect which would affect his guilt or innocence of the crime charged."

It is also objected that evidence of general reputation of the defendant should be limited to the time of the act charged. A standard text-writer thus states the rule; "Since character evidence is offered as proof with respect to some particular act, the time of the commission of the act fixes the period to which testimony of character must be limited. It is his character at that particular time, and hence, as proof of character, his reputation at that time which is material. His subsequent reputation will not be admitted." [McKelvey on Evidence, ses. 119, p. 168.]

In 22 Corpus Juris, 480, sec. 575, it is said: "The evidence must be directed to general reputation as it existed at the time of the occurrence rendered important by the evidence, or at a time sufficiently near thereto to be relevant; remoteness, if not too great, going to the weight rather than the admissibility of the evidence. It is also necessary that the reputation shown should be that which existed before the occurrence of the circumstances out of which the litigation arose."

In State v. Johnson, 60 N. C. 152, cited in the notes, 22 C. J. 480, the reason for the rule is thus stated: "A different rule will expose the defendant to the great danger of having his character ruined or badly damaged, by the arts of a popular or artful prosecutor, stimulated to activity by the hope of thus making his prosecution successful. Evidence of character is of the nature of hearsay, and the general rule in relation to that kind of testimony is, that it shall not be received if the hearsay be *post litem motam.* . . .

The rule for this is 'that no man is presumed to be indifferent in regard to matters in actual controversy; for when the contest has begun, people, generally, take part on the one side or the other—their minds are in a ferment, and if they are disposed to speak the truth, facts are seen by them through a false medium. To avoid, therefore, the mischiefs, which would otherwise result, all *ex parte* declarations, even though made upon oath, referring to a date subsequent to the beginning of the controversy, are rejected.''

The judgment is reversed and the cause remanded.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.